IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUMPVIEW ENTERTAINMENT,** **LLC, et al.,** : : : | |
| Plaintiffs, : : | CIVIL ACTION NO.: |
| v. : : | 2:13-CV-3147-CDJ |
| **CATHERINE SCORSESE,** : : | |
| Defendant. : | |

### MEMORANDUM

**Judge C. Darnell Jones, II**                                                                February 27, 2014

Pending before the court is defendant Catherine Scorsese's motion to dismiss or, alternatively, for transfer of venue pursuant to the First Filed Rule and on the grounds that this court lacks personal jurisdiction. (Doc. No. 5.) After a thorough review of the record, the court will **GRANT** the motion **IN PART** and **DENY IN PART**. It will be **GRANTED** insofar as it seeks dismissal of this case on personal jurisdiction grounds but **DENIED** insofar as it seeks to have this matter transferred to a different venue. Furthermore, the motion will be **DENIED** insofar as it seeks dismissal pursuant to the First Filed Rule.

### BACKGROUND

This case arises out of a contract in which defendant allegedly agreed to co-produce a motion picture in exchange for a share of the profits and a $5,000 flat fee.[1] (Doc. No. 4 (Am. Compl.))

---

[1]The employment contract provides:

It is understood and agreed that one hundred percent (100%) of the production and marketing expenses of Campus Life Productions, LLC ("Campus Life") shall be funded by Michael Simon and at least one other investor. In consideration of that fact, intending to be legally bound, it is also understood and agreed that the revenues of Campus Life shall be distributed as follows:

Production of the film, titled "Campus Life," began in January 9, 2012, soon after Campus Life Productions was incorporated. Despite initial optimism about the project, the parties' relationship quickly began to sour. (Doc. No. 4, at 4 (Am. Compl.)) Plaintiffs allege that defendant Scorsese made numerous promises to help in the production of the film but that she never followed through on her commitments. (Doc. No. 4 (Am. Compl.)) She allegedly offered plaintiffs free studio space and free equipment needed to shoot various scenes in the film but later reneged on her promises. (Doc. No. 4 (Am. Compl.)) She also told plaintiffs that several people would work for free but later demanded that they be compensated for their contributions. (Doc. No. 4 (Am. Compl.)) In one instance, plaintiffs allege that defendant advised several employees to withhold promotional photos and behind-the-scenes footage until they received compensation, despite their initial promise to work without pay. (Doc. No. 4, at 6 (Am. Compl.))

The complaint also alleges that defendant Scorsese repeatedly and purposefully disrupted the project for her personal gain. The complaint alleges that defendant Scorsese threatened several

---

- 125% of Michael Simon's investment shall be paid to Michael Simon and 125% of the investments of others shall be paid to them as well.

- Of the remaining revenues 50% shall be paid to Michael Simon/Investor(s) and to JumpView Entertainment, LLC, in equal shares.

- The balance of the revenues, after payments to actors and crew members and marketing expenses, shall be paid in equal shares to Michael Simon, Kenneth Waddell, and Catherine Scorsese ("Residue Payments").

Compensation: $5,000.00, plus 2.0% of Residue Payments allotted to Michael Simon, Kenneth Waddell and Catherine Scorsese.

Payment of the $5,000.00 will be as follows: $2,500 during Production, $2,500 after Production concludes.

employees and continually disagreed with the other directors and producers as to how the film should be shot and who should play certain roles. (Doc. No. 4 (Am. Compl.)) When her demands were not met, defendant allegedly coerced the cast and crew to "walk off the production with Scorsese," and "began to rally crew members against Campus Life and JumpView, disturbing the production." (Doc. No. 4, at 8 (Am. Compl.)) Despite her actions, Scorsese insisted that she was entitled to 25% of JumpView, a demand to which plaintiffs allegedly never agreed.[2] In response to plaintiffs' refusal to split the company, defendant Scorsese allegedly told the cast and crew that they would not be paid for their services, causing further delays. Although they do not elaborate on the details, plaintiffs allege that defendant convinced Ray Liotta, Jesse McCartney, and her father, Martin Scorsese, not to promote the film, thereby ensuring its failure as a commercially-viable enterprise. (Doc. No. 4, at 9-10 (Am. Compl.)) Finally, plaintiffs claim that defendant defamed JumpView and Campus Life by telling people in the film industry that she was assaulted by JumpView's directors and that JumpView and Campus Life had breached their contract with her. (Doc. No. 4, at 15 (Am. Compl.))

## STANDARD OF REVIEW

Rule 12(b)(2) provides that a court must dismiss a complaint if the plaintiff fails to establish that the court has personal jurisdiction over the parties. Fed.R.Civ.P. 12(b)(2). The plaintiff bears the burden of proof and, because jurisdictional questions are "inherently a matter which requires resolution of factual issues outside the pleadings," a plaintiff may not rely on bare allegations. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101, n. 6 (Sept. 20, 2004). As such, a party must produce evidence, in the form of "sworn affidavits or other competent evidence," which establishes personal jurisdiction by a preponderance of the evidence. *Id.* "However, when the court does not hold an

---

[2]The aforementioned employment agreement only provided that defendant Scorsese would receive profits from Campus Life Productions, LLC.

evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

## DISCUSSION

Pennsylvania has adopted a long arm jurisdiction statute, so courts in this state may exercise jurisdiction to the fullest extent allowed by the Due Process Clause of the Fifth Amendment. *Gary v. F.T.C.*, 526 Fed.App'x 146, 149-50 (3d Cir. 2013); 42 Pa. Cons. Stat. Ann. §5322(b). To establish personal jurisdiction, a defendant must have "sufficient minimum contacts" such that exercising jurisdiction comports with "fair play and substantial justice." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1222 (3d Cir. 1992) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). A defendant has minimum contacts with a forum if the defendant "purposefully availed itself of the privilege of conducting activities within the forum," or "purposefully directed its activities at the forum." *O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 317 (3d Cir. 2007) ("purposefully availed"); *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) ("purposefully directed") (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Farino*, 960 F.2d at 1223. "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

Here, plaintiffs raise a number of contacts that they argue establish minimum contacts. First plaintiffs explain that defendant Scorsese has done business with two Pennsylvania corporations for

at least several years. (Doc. No. 9 (Response in Opposition)) They further allege that defendant appropriated materials from these Pennsylvania corporations and that "[e]verything related to JumpView and Campus Life – the entities at issue – is in Pennsylvania, including the operating agreements that provide that Pennsylvania law and Pennsylvania tribunals govern, the entities' bank accounts, and the headquarters and principal place of business." (Doc. No. 9 (Response in Opposition)) These allegations certainly go to show *plaintiffs'* ties to the forum state, but are not probative of whether *defendant* reached out or purposefully availed herself of this forum. Nothing indicates that defendant was aware that plaintiffs were Pennsylvania corporations or that they were located in Pennsylvania. The record indicates that filming was done in New Jersey, and defendant has stated in a sworn affidavit that she has not been to Pennsylvania in over seven years. *Farino*, 960 F.2d at 1226 (physical contact "figures into analysis" but is not necessary); (Doc. No. 4, at 6 (Am. Compl.)) (filming occurred at Fairleigh Dickinson University).

Plaintiffs next state that defendant entered into a contract with a Pennsylvania corporation, but the Third Circuit has found a contract, by itself, is insufficient to establish minimum contacts. *Farino*, 960 F.2d at 1223 ("The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident.") Of course, the Third Circuit has instructed, "[t]he requisite contacts . . . may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Id.* Here, however, the contract contains no language which would place defendant on notice that she was dealing with a Pennsylvania corporation. (Doc. No. 9, Exh. F (Response in Opposition)) It contains no mention of the corporation's geographic location, nor does it have a forum selection or choice of law clause. Moreover, there are no allegations or evidence that negotiations took place in Pennsylvania or that the parties discussed that JumpView

or Campus Life were Pennsylvania corporations with headquarters in Pennsylvania. Furthermore, while the complaint indicates that plaintiffs conducted phone calls with defendant while plaintiffs were physically in Pennsylvania, the record is unclear as to the specifics of these calls, i.e. whether defendant initiated them and whether she knew or should have known that she was calling a Pennsylvania number. Finally, the complaint and plaintiffs' subsequent filings on this matter are devoid of any information indicating that defendant Scorsese approached plaintiffs' about this agreement; instead, it appears that plaintiffs reached out to defendant and asked for her assistance in producing the film. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (distinguishing between active and passive buyers). As the Supreme Court said in *Burger King*, "[t]his purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated . . . or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

As a last resort, plaintiffs argue that this court has jurisdiction because defendant engaged in tortious conduct the impact of which was felt in Pennsylvania by a Pennsylvania corporation. Plaintiffs appear to be invoking the so-called *Calder* "effects test." (Doc. No. 9 (Response in Opposition)) In *Marten v. Godwin*, the Third Circuit explained this test by listing its required elements:

    (1)    The defendant committed an intentional tort;
    (2)    The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
    (3)    The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

Although the complaint and accompanying exhibits contain allegations as to the first two elements, plaintiff has failed to allege or provide evidence that defendant expressly aimed her tortious conduct at this forum. In fact, nothing in the complaint indicates that defendant knew that JumpView or Campus Life Films were Pennsylvania corporations and therefore that the effect of her allegedly tortious conduct would culminate in Pennsylvania. As such, plaintiff has failed to establish personal jurisdiction under the *Calder* "effects test."

## CONCLUSION

In light of the foregoing, the court will **GRANT** the motion **IN PART** and **DENY IN PART**. It will be **GRANTED** insofar as it seeks dismissal of this case on personal jurisdiction grounds but **DENIED** insofar as it seeks to have this matter transferred to a different venue. Furthermore, the motion will be **DENIED** insofar as it seeks dismissal pursuant to the First Filed Rule.

**BY THE COURT:**

/s/ C. Darnell Jones, II

**C. DARNELL JONES  II,  J.**